

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| JOURNEY GROUP COMPANIES d/b/a SIOUX FALLS CONSTRUCTION, a South Dakota Corporation, | * * * * | CIV 16-4125 |
| Plaintiff, | * * | |
| -vs- | * * | MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR |
| SIOUX FALLS CONSTRUCTION, LLC, a South Dakota Limited Liability Company, and LORENA DE JESUS, aka LORENA ZAMORA, aka LORENA FLEY, an individual, | * * * * * | DEFAULT JUDGMENT AND PERMANENT INJUNCTION |
| Defendants. | * * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Plaintiff Journey Group Companies d/b/a Sioux Falls Construction has filed a Motion for Default Judgment and Permanent Injunction. (Doc. 17.) The Court has reviewed the accompanying pleadings, including the Affidavit of Sander J. Morehead, and the applicable law. For the following reasons, the motion will be granted.

## BACKGROUND

The following undisputed facts are taken from Plaintiff Sioux Falls Construction's Amended Complaint (doc. 12), and are assumed to be true for purposes of deciding this motion. *See Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1333 n.7 (8th Cir. 1988) (upon entry of default the defaulting defendant "is deemed to have admitted all well pleaded allegations in the complaint.").

Plaintiff Sioux Falls Construction has offered quality construction services in South Dakota and the surrounding region for over a century. It has continuously used the service mark "Sioux Falls Construction" ("the Mark") in advertising and otherwise promoting its construction services

with great success and consumer recognition. The Mark has come to be recognized by those in the construction industry and those who seek construction services as an indication of the source and quality of Sioux Falls Construction's services.

The Mark is registered with the United States Patent & Trademark Office ("USPTO"), both as a design mark and a word mark for "building and highway construction services." Sioux Falls Construction has also registered the "Sioux Falls Construction" name with the South Dakota Secretary of State on its Fictitious Name Registration system.

Defendant Sioux Falls Construction, LLC ("SFC") is a limited liability company organized by Defendant Lorena De Jesus ("De Jesus") on January 4, 2016 under South Dakota law. It is believed that, prior to forming SFC in early 2016, De Jesus did business as L&J Construction in Minnesota, and never did business as Sioux Falls Construction before that time. According to its website, SFC offers construction services including roofing and siding services. SFC and De Jesus began promoting and advertising construction services in interstate commerce in conjunction with the Mark under the name "Sioux Falls Construction, LLC." De Jesus created a website for SFC at the domain www.siouxfallsconstructionsd.com ("the Pirated Domain"), which Sioux Falls Construction believes De Jesus or SFC purchased on or about March 29, 2016. De Jesus and SFC also created a Facebook page for SFC. SFC's first post on its Facebook page occurred on or about March 31, 2016. SFC and De Jesus intentionally misrepresented to consumers at the Pirated Domain and on SFC's Facebook page that they have operated as "Sioux Falls Construction" and provided construction services under that name since 1987.

SFC's and De Jesus's use of Sioux Falls Construction's mark includes use of the Mark on the Pirated Domain as well as displaying the Mark on the sides of SFC's commercial vehicles, and use of the Mark on its business cards. SFC is doing business, advertising and promoting its construction services in interstate commerce using "Sioux Falls Construction" as its name to trade on the long-standing reputation Sioux Falls Construction has built in the Mark, and De Jesus has been personally involved in SFC's use of "Sioux Falls Construction."

On June 28, 2016, Sioux Falls Construction's attorneys sent by certified mail, return receipt requested, and by e-mail, a letter to De Jesus and SFC advising them that they were infringing upon Sioux Falls Construction's registered service mark. De Jesus represented that SFC would cease and desist using the Mark in conjunction with its construction business. However, SFC and De Jesus continued to conduct business in association with the Mark, confusing both consumers and potential consumers. For instance, Sioux Falls Construction was contacted by both potential consumers and Sioux Falls, South Dakota, city officials who were confused as to whether Sioux Falls Construction was responsible for SFC commercial trucks with the Mark on the sides of the trucks. Sioux Falls city officials have called Sioux Falls Construction and noted that vehicles bearing the Mark were located at job sites lacking a proper building permit.

Despite repeated subsequent contacts between Sioux Falls Construction's counsel and SFC and De Jesus demanding that they cease and desist use of the Mark, SFC and De Jesus nevertheless continued to conduct business in association with the "Sioux Falls Construction" name.

After being notified of Sioux Falls Construction's rights in the Mark, including Sioux Falls Construction's Registrations regarding that Mark, SFC and De Jesus fraudulently obtained a South Dakota state registration for the mark "Sioux Falls Construction LLC" under SDCL Ch. 37-6 on September 12, 2016, by misrepresenting to the South Dakota Secretary of State's Office that it had valid rights in the Mark.

As a result of SFC and De Jesus' actions, Sioux Falls Construction instituted this action alleging trademark infringement, cybersquatting, trademark dilution, counterfeit trademark and unfair competition under the Lanham Act, and state law claims for false representations under the Deceptive Trade Practices Act and for cancellation of state registration of the mark "Sioux Falls Construction, LLC." Sioux Falls Construction seeks permanent injunctions, statutory damages and attorney fees.

The initial Complaint was filed on September 2, 2016. A Summons was obtained from the Clerk of Courts the same day, and Sioux Falls Construction began efforts to serve De Jesus both individually and as Registered Agent of SFC. Service of the Summons and Complaint was accomplished on both Defendants on October 18, 2016. (Docs. 6 and 7.) Defendants were required to serve an answer within 21 days. FED.R.CIV.P. 12(a)(1)(A)(i). They failed to do so. After its motion to amend was granted, Plaintiff filed an Amended Complaint on November 30, 2016. (Doc. 12.) Defendants failed to file an answer or otherwise respond to the Amended Complaint, and Plaintiff moved for entry of default on December 21, 2016. (Doc. 13.) The Clerk of Court entered default against Defendants on the same day. (Doc. 16.) Plaintiff now moves for entry of default judgment. (Doc. 17.)

## DISCUSSION

Under Rule 55, "[w]hen a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). "Entry of a default under Federal Rule of Civil Procedure 55(a) is not, as such, entry of a judgment; it merely permits the plaintiff to move for a default judgment under Rule 55(b)(2), assuming that the default is not set aside under Rule 55(c)." *Inman v. American Home Furniture Placement, Inc.*, 120 F.3d 117, 118 n.2 (8th Cir. 1997). Thus, Rule 55 requires two steps before entry of a default judgment: "first, pursuant to FED.R.CIV.P. 55(a), the party seeking a default judgment must have the clerk enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend; second, pursuant to FED.R.CIV.P. 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule." *Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673, 683 (N.D.Iowa 1995). In this case, the Clerk of Court has entered default pursuant to Rule 55(a), completing the first step in the process toward default judgment, and Plaintiff has now moved for a default judgment under Rule 55(b)(2).

Upon entry of default by the Clerk of Court, the defaulting defendant "is deemed to have admitted all well pleaded allegations in the complaint." *Taylor v. City of Ballwin, Mo.*, 859 F.2d

1330, 1333 n.7 (8th Cir. 1988) (quoting *Caribbean Produce Exchange v. Caribe Hydro–Trailer, Inc.*, 65 F.R.D. 46, 48 (D. Puerto Rico 1974)). The next question is whether the facts in the Amended Complaint are sufficient to establish liability. Sioux Falls Construction argues that it has pled admitted facts that establish Defendants' liability for: 1) violating Sioux Falls Construction's rights under the Lanham Act including 15 U.S.C. §§ 1114 and 1125; 2) a counterfeit trademark under 15 U.S.C. § 1116; and 3) cybersquatting in violation of 15 U.S.C. § 1125(d). Plaintiff also asserts that the admitted facts establish that SFC's state trademark registration for "Sioux Falls Construction, LLC" should be cancelled.[1]

A. Liability

1. Trademark Infringement

Plaintiff alleges that Defendants are liable for trademark infringement under 15 U.S.C. §§ 1114 and 1125(a)(1). To establish a claim for trademark infringement, a plaintiff must show that it owns a valid protectable trademark and that a defendant's unauthorized use of the trademark creates a likelihood of confusion. *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011). By default, Defendants admit both that Plaintiff owns the registered mark "Sioux Falls Construction," and that Defendants intentionally used the Mark despite Plaintiff's demands that they not do so. Accordingly, the first two elements of trademark infringement are established.

With respect to the third prong of this analysis, the Eighth Circuit has consistently considered the following six factors in determining whether a likelihood of confusion exists: (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the owner; (5) incidents of actual confusion; and (6) the type of product,

---

[1]Plaintiff does not address its claims for trademark dilution under the Lanham Act, and for deceptive trade practices and unfair competition under South Dakota common law, stating that the elements of these claims and those addressed herein are "largely redundant" and afford similar relief. (Doc. 18 at 6 n.1.)

5

its costs, the conditions of purchase, and the degree of care to be exercised by potential customers of the trademark holder. *See Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 399 (8th Cir. 2000); *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 626 (8th Cir. 1987); *SquirtCo. v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). No single factor is dispositive. *See Mutual of Omaha*, 836 F.2d at 399 n.3 ("These are not necessarily the only factors that might be relevant in a particular case. The ultimate inquiry always is whether, under all the circumstances, there exists a likelihood of confusion between the plaintiff's trademark and the allegedly infringing use."). Actual confusion is positive proof of the likelihood of confusion. *See SquirtCo.*, 628 F.2d at 1091.

Here, Sioux Falls Construction alleges that Defendants used the mark "Sioux Falls Construction" on their website, Facebook page, commercial vehicles and business cards for marketing its construction services in Sioux Falls and the surrounding area. (Doc. 12, Amended Complaint at ¶ 20.) Plaintiff further alleges that the use of the Mark confuses consumers. (*Id.* at ¶ 22.) For example, "Sioux Falls Construction has been contacted by both potential consumers and Sioux Falls, South Dakota, city officials who were confused as to whether Sioux Falls Construction was responsible for SFC commercial trucks with the 'Sioux Falls Construction' Mark on the sides of the trucks." (*Id.* at ¶ 23.) Furthermore, city officials called Sioux Falls Construction and indicated that vehicles bearing the "Sioux Falls Construction" Mark were located at job sites lacking proper building permits. (*Id.* at ¶ 24.) These facts alleged in the Amended Complaint are uncontested due to Defendants' default. Since the two companies provide similar services, the use of a name that incorporates Plaintiff's Mark is likely to cause confusion as to the source of SFC's construction services. The Court concludes that Plaintiff has established a likelihood of confusion.

Plaintiff has established all of the elements of trademark infringement and thus is entitled to default judgment as to liability on this claim.

2. Counterfeit Trademark

A "counterfeit mark" is "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or

distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B). A defendant is liable for counterfeiting under the statute when it is shown that the defendant (1) infringed a registered trademark in violation of 15 U.S.C. § 1114(1), and (2) intentionally used the registered trademark knowing that it was counterfeit. 15 U.S.C. §§ 1116(d), 1117(b); *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994). The Court already has determined that Defendants infringed Plaintiff's registered mark in violation of 15 U.S.C. § 1114(1)(a). Defendants admitted to intentionally copying Sioux Falls Construction's registered Mark to confuse consumers and to capitalize on the success of Plaintiff's construction business. (Doc. 12 at ¶ 67.) Thus, the Court also finds, based on the admitted allegations in the Amended Complaint, that Defendants intentionally used the Mark. The analysis therefore focuses on whether Defendants used the Mark knowing it was counterfeit. A "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

By default, Defendants admitted to using a mark that is identical to Sioux Falls Construction's registered Mark to promote the same services covered by Plaintiff's registrations. (Doc. 12 at ¶¶ 33-34.) Specifically, SFC used the identical "Sioux Falls Construction" Mark on its commercial vehicles without the additional designation "LLC." (Doc 12 at Ex. C.) Accordingly, Defendants knew the mark was counterfeit.

After establishing all of the elements of its counterfeit trademark claim, Plaintiff is entitled to default judgment as to liability.

3. Cybersquatting

"Congress enacted the Anti–Cybersquatting Protection Act (ACPA), 15 U.S.C. § 1125(d), to address a new form of piracy on the Internet caused by acts of cybersquatting, which refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1057 (10th Cir. 2008) (internal quotation marks and citation omitted).

"The ACPA provides for liability if a person registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive mark, with a bad faith intent to profit from that mark." *Id.* (citing 15 U.S.C. § 1125(d)(1)(A)). To prevail on a claim for cyberpiracy, a plaintiff must prove that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.' " *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)).

Here, Plaintiff has alleged that Defendants registered and operated a website under the domain name www.siouxfallsconstructionsd.com, which is confusingly similar to the registered Mark, "Sioux Falls Construction." (Doc. 12 ¶¶ 8-10, 17, 52-53.) Furthermore, Plaintiff alleges that Defendants' registration of the siouxfallsconstructionsd.com domain was done in bad faith with the intention to profit from Plaintiff's Mark. (*Id.* ¶¶ 21, 32, 39, 54.) Therefore, the Court concludes that Plaintiff's cyberpiracy claim is adequately pled, and taking the allegations as admitted by Defendants, Plaintiff has established all of the elements of and is entitled to the entry of default judgment on its cyberpiracy claim.

4. Cancellation of State Trademark Registration

Plaintiff seeks cancellation of SFC's state registration of the "Sioux Falls Construction, LLC" mark in South Dakota. South Dakota law provides:

> The secretary of state shall cancel from the register any registration concerning which a court of competent jurisdiction shall find
> (1) That the registered mark has been abandoned;
> (2) That the registrant is not the owner of the mark;
> (3) That the registration was granted improperly; or
> (4) That the registration was obtained fraudulently.

SDCL 37-6-19. Plaintiff has pled, and Defendants have admitted by default, that Sioux Falls Construction is the true owner of the Mark, that there is a likelihood of confusion between the parties' use of the name "Sioux Falls Construction" in their marks, and that Defendants fraudulently obtained their state registration by misrepresenting they had rights in the name "Sioux Falls

8

Construction" after being notified of Plaintiff's superior rights. (Doc. 12 at ¶¶ 81-86.) These facts establish that SFC's state registration for "Sioux Falls Construction, LLC" was granted improperly or obtained fraudulently, and thus it must be cancelled pursuant to SDCL 37-6-19.

B. Relief

1. Damages

Rather than actual damages, Plaintiff seeks statutory damages for both the cybersquatting claim in Count III and the counterfeit trademark claim in Count V. With regard to damages for the counterfeit trademark claim, the Lanham Act provides:

> In a case involving the use of a counterfeit mark...in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect...to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
>
> (1) not less than $ 1,000 or more than $ 200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $ 2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). The statutory damages provisions in the Lanham Act, cited above, are akin to the statutory damages provision of the copyright laws.[2] In copyright law, the Supreme Court has said that district courts have wide discretion in determining the amount of damages to be awarded within the statutory range. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-32

---

[2]The copyright laws provide, in relevant part:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1).

9

(1952). The purpose of statutory damages is not only to compel restitution of profit and reparation for injury, but also to discourage the wrongful conduct of infringement. *Id.* at 233; *see also Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907-08 (8th Cir. 2012) ("It makes no sense to consider the disparity between 'actual harm' and an award of statutory damages when statutory damages are designed precisely for instances where actual harm is difficult or impossible to calculate."); *Cass Cty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 643 (8th Cir. 1996) ("statutory damages have evolved and now are intended not only to put the plaintiff in the position he would have been but for the infringement, but also, and arguably preeminently, to punish the defendant."). The Court is guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." *F.W. Woolworth*, 344 U.S. at 232.

Sioux Falls Construction does not request a specific amount of statutory damages for Defendants' counterfeit trademark, but rather seeks "not less than $1,000 nor more than $200,000," the minimum and maximum provided by the statute. (Doc. 18 at p. 24.) Plaintiff alleges in the Amended Complaint that Defendants' counterfeit mark damaged Plaintiff's goodwill and that it also caused diversion of sales and lost profits. (Doc. 12 ¶ 37.) Plaintiff does not, however, provide any approximation of lost sales. But Defendants have admitted by default to causing consumer confusion by using the Mark on their Facebook page, commercial vehicles and business cards. Defendants continued to display counterfeits of Plaintiff's trademark despite their receipt of notice that their actions were unauthorized by Plaintiff. Plaintiff has notified the Court, however, that Defendants recently filed paperwork with the South Dakota Secretary of State to formally change the name of SFC LLC to "A Plus Roofing and Siding, LLC." (Morehead Aff. Ex. G.) These considerations weigh in favor of an award of $20,000 in statutory damages to offset Plaintiff's losses and to deter Defendants from using a counterfeit of Plaintiff's trademark in the future.

Regarding the cybersquatting claim, the ACPA provides for the recovery of actual damages or, alternatively, statutory damages for cybersquatting. *See* 15 U.S.C. § 1117(d). Damages under the ACPA are not duplicative of damages awarded under the Lanham Act. *See St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1203-04 (11th Cir. 2009) (holding that the district

court "erred in determining that [plaintiff] could not recover damages under both the ACPA and the Lanham Act" in part because the statutory text of the ACPA "explicitly states that a cyberpiracy damages award is 'in addition to' any other civil remedies otherwise available," citing 15 U.S.C. § 1125(d)(3)). A court can award a plaintiff seeking statutory damages for a violation of the ACPA "the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d).

Sioux Falls Construction does not request a specific amount but instead seeks "not less than $1,000 nor more $100,000" in statutory damages for Defendants' cybersquatting violation. (Doc. 18 at p. 24.) Just as they do under the copyright and trademark laws, courts have "wide discretion" in determining an appropriate amount of statutory damages under the ACPA, and are limited only by the statutory minimum and maximum. *See, e.g., Kiva Kitchen & Bath Inc. v. Capital Distributing Inc.*, 319 Fed. Appx. 316, 320 (5th Cir. 2009) (quoting *Columbia Pictures Television, Inc. v. Krypton Broad of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)). This Court found that Defendants violated § 1125(d) by registering and using the domain name siouxfallsconstructionsd.com, which is confusingly similar to Sioux Falls Construction's mark, and that it did so with the bad faith intent to profit from the goodwill associated with the Mark by confusing consumers wishing to hire the services of Sioux Falls Construction. Defendants continued to maintain their infringing domain name despite their receipt of notice that their actions were unauthorized by Plaintiff. Courts have awarded maximum statutory penalties where defendants use cybersquatting to divert customers from a commercial competitor. *See Kiva Kitchen & Bath*, 319 Fed. Appx. at 320 (upholding an award of $100,000 per domain name where defendant exhibited a bad faith intent to divert customers from plaintiff's website, and the parties were direct competitors). It appears that Defendant SFC, LLC is a much smaller operation and does provide some competition for Sioux Falls Construction as Defendant was doing work in Sioux Falls, albeit unlicensed work. Furthermore, although not alleged in the Amended Complaint, Plaintiff has advised the Court that, after the lawsuit started, Defendants disabled access to the domain. (Morehead Aff. Ex. F.) Balancing these considerations, as well as the fact that Plaintiff has not shown that Defendants' use of the domain name caused it to suffer damages

11

in any particular amount, the Court finds that an award of $20,000 (one-fourth of the statutory maximum) is a just award for the cybersquatting in this case.

2. Attorney Fees

The Lanham Act authorizes "reasonable attorney fees to the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). "Courts have defined the characteristics of exceptional cases with adjectives suggesting egregious conduct by a party." *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994). According to the Eighth Circuit, an exceptional case within the meaning of the Lanham Act "is one in which one party's behavior went beyond the pale of acceptable conduct." *Id.* As noted above, Defendants deliberately and knowingly counterfeited Sioux Falls Construction's mark, marketed its own services with this counterfeit mark, and intended to use Sioux Falls Construction's well-known mark in an attempt to profit from the goodwill of that well-established construction company. Thus, this is an exceptional case justifying an award of fees. Plaintiff's counsel shall file an application for attorneys' fees with a supporting affidavit and time records within 10 days of this Order.

D. Permanent Injunction

Sioux Falls Construction requests that the Court issue a permanent injunction against Defendants, and any of their agents, affiliates, subsidiaries, officers, employees, and all others acting in concert with or participating with them in promoting and performing construction services, from using anywhere in the United States the name "Sioux Falls Construction" or any confusingly-similar variation thereof to promote, market, or sell construction services. Plaintiff also request an order specifically requiring Defendants to:

1. Transfer the ownership of the domain www.siouxfallsconstructionsd.com to Sioux Falls Construction as contemplated by 15 U.S.C. § 1125(d)(1)(C);

2. Remove SFC, LLC, from the membership of any organization related in any manner to construction services, to the extent the membership states that SFC, LLC is "Sioux Falls Construction" or "Sioux Falls Construction, LLC;"

3. Cancel the state trademark registration for "Sioux Falls Construction, LLC" obtained from the South Dakota Secretary of State, if it is not otherwise cancelled by the State of South Dakota;

4. Remove the words "Sioux Falls Construction" from all signage, websites, brochures, or other advertising or promotional material used in promoting Defendants' business, including removing "Sioux Falls Construction" from vehicles used by the Defendants in performing construction services;

5. Cancel its registration under the name "Sioux Falls Construction" filed with the State of Iowa's Division of Labor;

6. File within 30 days an affidavit attesting that the Defendants have ceased all use of the mark "Sioux Falls Construction" including attesting they have taken the actions requested above.

(Doc. 18 at p. 23.)

The Lanham Act gives the Court "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a). The injunction may include a provision requiring the enjoined party to file a report under oath explaining how they have complied with the injunction within thirty days of being served with a copy of the injunction order. *Id.*

The standard for a preliminary and permanent injunction is essentially the same, except that for a permanent injunction, the plaintiff must show actual success on the merits. *See Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987); *see also Bank One, Utah v. Guttau*, 190 F.3d 844, 847 (8th Cir. 1999). As discussed above, Plaintiff has succeeded on the merits by way of Defendants' default. In order to obtain permanent injunctive relief Plaintiff must show: 1) that it suffered an irreparable injury; 2) legal remedies such as monetary damages are inadequate to compensate for the injury; 3) the balance of hardships between the plaintiff and the defendant warrant an equitable remedy; and 4) the issuance of an injunction would not disserve the public interest. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

"Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [Plaintiff] can demonstrate a likelihood of customer confusion." *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987). Harm to reputation and damage to goodwill are difficult to quantify and monetary damages are generally inadequate to compensate such injuries. *See Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003). In addition to admitting allegations of actual confusion, Defendants by default have admitted they are using "Sioux Falls Construction" to deceive consumers and capitalize on Sioux Falls Construction's goodwill. The first two elements are therefore satisfied in this case. The balance of harms factor also supports entry of a permanent injunction. Trademarks vest a registrant with the exclusive use of that mark. *See General Mills*, 824 F.2d at 626. Defendants' infringement erodes that exclusivity and harms Sioux Falls Construction. Defendants may continue to market and provide construction services under a non-infringing mark, so there is no harm to Defendants if their infringing activity is enjoined. Finally, entry of an injunction serves the public interest by enforcing valid trademarks and preventing consumer confusion in the marketplace. *See Coca–Cola Co. v. Purdy*, 382 F.3d 774, 789 (8th Cir. 2004) (public harmed where internet search for plaintiff's name could be diverted to one or more of the defendant's websites); *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) ("the public interest is served by preventing customer confusion in the marketplace.").

The Court finds that the injunctive relief proposed by Plaintiff is appropriate. Defendants, though aware of the claims brought against them, have chosen to ignore this lawsuit. Defendants have never responded to Sioux Falls Construction's lawyer's letter asking them to confirm in writing they have ceased using the "Sioux Falls Construction" name. (Doc. 12-6.) And since the Amended Complaint was filed, Defendants registered SFC with the State of Iowa's Division of Labor as a contractor under the name "Sioux Falls Construction LLC." (Morehead Aff. Ex. L.) Defendants have demonstrated repeated failures to respect Plaintiff's trademark rights, and have continued to misappropriate the goodwill of the Mark in an effort to raise revenue. Failure to grant the injunction would needlessly expose Plaintiff to the risk of continuing irreparable harm. Accordingly,

IT IS ORDERED:

1. That Plaintiff's Motion for Default Judgment and Permanent Injunction, doc. 17, is granted to the extent set forth in this Order.

2. That Plaintiff's counsel shall file an application for attorneys' fees with a supporting affidavit and time records within 10 days of this Order.

3. That, within 10 days of this Order, Plaintiff's counsel shall prepare and submit to the Court a proposed Default Judgment and Permanent Injunction for the Court's consideration.

3. That, after its determination of Plaintiff's attorney fee award, the Court will enter a Default Judgment and Permanent Injunction in accordance with the attorney fee award and the findings and conclusions in this Order.

Dated this 12th day of April, 2017.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
(SEAL)  DEPUTY